| July Term, | Elliott *et al. vs.* Sutor. | 1868. |
| --- | --- | --- |

# Wheeling.

\* Absent, HARRISON, J.

WILLIAM A. ELLIOTT *et al. vs.* ROBERT SUTOR.

July Term, 1868.

1. A verdict in ejectment, where land is claimed in fee simple, finding for the plaintiff "so much of the land in the declaration in controversy as is included in the lines S. P., P. A., A. G. and G. S.," as delineated on the plat of survey made in the cause, is sufficient to warrant a judgment thereon, without finding the character of the estate under which the plaintiff claims. The plaintiff alone has a right to complain and to have the verdict find the character of the estate, when it is in his favor.

2. A declaration in ejectment claims five acres of land, and the plat of the surveyor made in the cause, shows that the boundaries and lines as described in the verdict finding for the plaintiff contains nine acres. HELD:

    1. The report of the surveyor is no part of the verdict, only the lines designated, as shown in the plat.

    2. That as the only question in dispute was a common line claimed by the plaintiff and defendant, and the jury having found for the former, it is immaterial whether the quantity be five or nine acres, as the bounds and line claimed in the declaration correspond with the bounds and line found by the jury. No injury could result to the defendant by the variance in the quantity included in the line in dispute.

William A. Elliot, and others, heirs at law of Andrew Young, deceased, brought an action of ejectment in Hancock county, in June, 1860, against Robert Sutor, to recover five acres of land owned by them in fee simple. The declaration averred that they claimed the land by patent from the commonwealth, and that it adjoined certain parties named, and

\* See page 1.

also that it "adjoined with Mathew Ritchie's survey by a line beginning at a white oak and running S. 65° W., 308 poles, and with the same course continued further, 68 poles to William Ledley's line," which was the line in dispute.

The defendant pleaded not guilty and the statute of limitations. The trial was had at the November term, 1863, when the jury returned a verdict for the plaintiffs, finding that they were entitled to so much of the land in the declaration mentioned as was "included in the lines S. P., P. A., A. G. and G. S., as delineated and laid down on a plat of survey ordered and returned in the cause, by J. H. Atkinson," who had made a survey in the cause by order of court.

The defendant moved the court to set aside the verdict and grant a new trial upon the ground that it was not in such form and to such effect as was required by the statute, which motion was allowed and a new trial was awarded. At a subsequent trial a verdict was had for the defendant. On the last trial the plaintiff offered in evidence a deed from one of the prior grantors, which was objected to, because, as alleged, of its defective acknowledgement and recordation, which objection was sustained by the court, and the plaintiff excepted. This latter point is fully set forth in the president's opinion. The court divided on the admissibility of this deed, but the case was determined on other questions. The plaintiff applied to this court for a supersedeas.

*Richardson* for the plaintiffs in error.
*Melvin* for the defendant in error.

BROWN, President. Two questions arise in this cause.

1st. Was the verdict of November 6th, 1863, sufficient to authorize the court to render a judgment on?

The declaration is very loosely and informally drawn, but was not demurred to. In it the plaintiffs substantially complain of the defendant, for that they were possessed of five acres of land in fee simple, in Yohogania county, viz—in Hancock—by virtue of a patent from the commonwealth

of Virginia, bounded by lands of William Ledley, Campbell Gibbs and Ritchie, and being so possessed thereof in fee simple, the defendant entered on said land and premises and unlawfully withheld the same from them, to their damage, &c. The defendant pleaded not guilty of unlawfully withholding the premises claimed by the plaintiffs in the declaration mentioned, also the statute of limitations of fifteen years. Issues were joined on the pleas. And the jury found a verdict in the following words: "We, the jury, find the defendant guilty, and do further find for the plaintiffs so much of the land in the declaration mentioned as is included in the lines S. P., P. A., A. G. and G. S., as delineated and laid down on the plat of survey, ordered and returned in the cause by John H. Atkinson."

Thereupon the defendant moved the court in arrest of judgment, because, as he alleged, the verdict was not in conformity with the 27th section of chapter 135 of Code 1860, in that it did not specify the estate found in the plaintiffs. And upon consideration of said motion the court was of opinion no judgment ought to be rendered on said verdict and set it aside for that cause and awarded a *venire de novo.* An additional objection is taken here, viz: that the plaintiffs in their declaration only claim five acres, while the report of the surveyor Atkinson, which accompanies the plat referred to in the verdict, shows the verdict includes nine acres. To this objection there are two answers. 1st. The report is no part of the verdict, only the lines S. P., A. G. and G. S., as shown on the plat. 2d. The report and plat, if looked to, show that the plaintiffs and defendant claimed under different grants having a common line, and the only question in dispute was whether that line was as claimed by the one or other of them, and the jury found it as claimed by the plaintiffs, and whether, therefore, the quantity as supposed in the declaration be five or nine acres it was wholly immaterial, as the bounds and line claimed in the declaration correspond with the bounds and line found by the jury.

The land and line claimed being the same as the land and

line found in the verdict no injury could possibly result to the defendant by the variance in the quantity included by the line in dispute. I think, therefore, that there is nothing in the objection taken here for that immaterial variance. Next as to the insufficiency of the verdict, as held by the circuit court; it will be observed that the declaration avers the plaintiffs were possessed in fee simple not of five acres only but also of the land or premises, of which the description and bounds had been given, and that the defendant entered and unlawfully withheld the same from the plaintiffs, to which the defendant pleaded that he was not guilty of unlawfully withholding the premises claimed by the plaintiffs in their declaration mentioned. Here then was the issue distinct, and the jury were sworn to try it; and the verdict is responsive to every material part of it, viz: 1st. It finds the defendant guilty. Guilty of what? Of unlawfully withholding from the plaintiffs the "land and premises in the declaration mentioned." But what land and premises did the plaintiffs mention in their declaration? That which they described and of which they there claimed to have been possessed in fee simple, and upon which the defendant entered and unlawfully withheld from them.

2d. The verdict "further finds for the plaintiffs so much of the land in the declaration mentioned as is included in the lines S. P., A. G. S., as delineated on the plat, &c." Here the declaration claims title in fee simple in the land described. The verdict finds for the plaintiffs the land in the declaration mentioned.

In the case of *McMurray* vs. *O'Neal*, 1 Call, 246, it was held that a verdict in ejectment in these words: "We find for the plaintiff one cent damage," was properly amended by the court and made to read: "We find for the plaintiff the lands in the declaration mentioned and one cent damage." If it were competent in that case to refer the finding to the land in the declaration mentioned, why not in this to the estate in the declaration mentioned. If it were competent in that case to interpolate the land and description why not in this case the fee simple in the land in the declaration

mentioned. I can perceive no difference in principle. Pendleton Prest, delivering the opinion of the court in that case, said, "It was a general verdict for the plaintiff, in a form very commonly used." The verdict in this case is far more special, definite and certain, and, I think, in form much more commonly used. But even if the verdict in such case should not be regarded in connection with the pleading and issue to which it is the direct response, but should be considered by itself, yet is this verdict good. At common law it was unquestionably so; and I do not think it was the purpose nor is the effect of the statute to make it bad. The only object of the statute was to protect the party succeeding from the repetition of actions of ejectment, as provided in the 35th section of chapter 135, Code 1860, making the judgment on the verdict conclusive as to the title or right of possession established in such action upon the party against whom it is rendered and those claiming under such party.

A finding and judgment for the plaintiffs of the land in controversy must be construed to mean either an estate in fee or a less estate, as by the Code 1860, chapter 116, section 8, lands conveyed or devised without words of limitation shall be construed to be in fee simple unless the contrary intention shall appear; while at common law it would only have been an estate for life; analogy would seem to require a like construction of the language of this verdict under chapter 135 of the Code. But taking that construction which would be most strongly against the plaintiffs, and hold the verdict to mean only the least estate, that a plaintiff can have in land and recover upon it, still the verdict is good, and only the plaintiffs could complain of it. Since the plaintiffs were entitled under the statute to have had this estate in the land definitely and specially found so as to leave no reason for doubt or construction upon any future controversy as to what was found, and thereby concluded forever; and the court should, instead of setting aside the verdict, have sent the jury back with instructions to conform their verdict in that particular

to the provisions of the statute, if required by the plaintiffs.

According to the case of *Tapscott* vs. *Cobb*, 11 Grat., 172, a party in peaceable possession, when entered upon and ousted by one not having title to or authority to enter on the land, may recover the premises in ejectment on his possession merely, and his right to recover cannot be resisted by showing that there is or may be an outstanding title in another, but only by showing that the defendant himself has title or authority to enter under the title; and in such a case the utmost that the verdict could find would not import a greater or more definite and certain estate in the plaintiffs than the present verdict does. I think, therefore, that the court erred in failing to enter judgment on the said verdict for the plaintiff.

Another question raised in the cause is the admissibility of the copy of the deed from Benjamin Johnson and wife to Ezekiel Hopkins, certified from the recorder's office of Ohio county, for the land in question under which the plaintiffs claim, and which was excluded from the jury by the court on the second trial, and a verdict was found for the defendant.

This deed, dated August 20th, 1791, was acknowledged by the parties as their acts and deed before the circuit court of Jefferson county, in Kentucky, September 7th, 1791, and on motion of said Hopkins, ordered to be certified, which acknowledgement, privy examination and order, are attested by the clerk in the following manner:

Teste:

WILL JOHNSON, C. J. C.

This deed so acknowledged, proved and certified was presented in the county court of Ohio county at February term, 1792, and by that court was ordered to be recorded, which was done accordingly as appears by the certificates of Moses Chapline, clerk, and of R. B. Woods, recorder, respectively.

It is objected in the first place that the attestation and signature of the clerk of Jefferson county is not sufficient to show he acted in his official character in attesting and

certifying said acknowledgment, but upon the principle and authority of the case of *McNeil* vs. *Governor for Clark*, 3 Grat., 299, the objection must be overruled as without foundation. In that case it was held that the official character of a constable was sufficiently established by his receipt signed with his name and the initials C. P. C. appended thereto, indicating his office as constable of Pocahontas county.

The next objection, and the one most earnestly relied on by the defendant, is that *when* the deed in question was acknowledged or ordered to be certified in the court of Jefferson county, Kentucky, in 1791, there was no law in Virginia admitting it to be recorded on such proof, because the statute of 1785 applied only to such acknowledgment or proof before a court of another State, and not before a court in the State of Virginia, unless it were the court of the county where the land lay.

In the case of *Hassler* and *King* the deed had been acknowledged in New York before the act of 1785 took effect; and when that act did take effect, and during the time it was in force, the deed was never presented nor admitted to record within the county where the land lay.

Subsequently the act of 1828 was passed, and in 1833 the deed was presented and admitted to record in the county where the land lay upon the original certificate of the Mayor of New York of its acknowledgment prior to October, 1785. The certificate of acknowledgment before the Mayor of New York, if made in 1833, would have been embraced by the provisions of the statute. And the court of appeals of Virginia held the deed well proved and recorded and admissible as evidence; and I see no reason why the same principle will not sustain the present deed, which was acknowledged before the court of Jefferson county, Kentucky, and admitted to record in Ohio county, where the land then lay. Whether there was any law authorizing the court of Jefferson county, Kentucky, to take such acknowledgment and proof of said deed on the 7th day of September, 1791, or not, it is not now necessary to inquire. For. if there was not, yet when the deed was admitted to record

in Ohio county, where the land lay in February term, 1792, when Kentucky was another State of the Union, like the deed in the case of *Hassler* and *King* it was then within the letter and spirit of the act of 1785, then in force. Indeed it is a stronger case than *Hassler* and *King* in that it was admitted to record while the act of 1785 continued in force, with reference to the provisions of which it had been acknowledged and certified. While the deed in that case was not admitted to record for some thirty-six or thirty-seven years after its acknowledgment and after the act of 1785 had been and remained many years repealed and the provisions thereof in part re-enacted only a few years before it was recorded in the county where the land lay.

It is said that at the date of the acknowledgment of this deed in question Kentucky was a part of the State of Virginia, and therefore the act of 1785 which authorized the acknowledgment before a court of another State did not embrace the case, Kentucky not being admitted as a State into the Union until June 1st, 1792. Without determining when Kentucky became a State, it may be said certainly that about the time of the acknowledgment and proof of the deed in question, that she was in a sort of chrysalis state, because the act of Virginia of December 18th, 1789, authorized the people of Kentucky to elect delegates to a convention to determine whether they would form a State provided Congress should consent to it. The convention was elected, assembled and approved the formation of the State of Kentucky prior to the date of the acknowledgment of the deed in question, and Congress gave its consent thereto by the act of February 4th, 1791, also before the said acknowledgment, and under the provisions of which the said State was afterwards admitted into the Union by act of June 1st, 1792. Besides it ought to require a strong case and strong reasons to justify a court of justice in setting aside a deed proved and recorded with the forms of law in the courts of the State, and remaining unquestioned for more than half a century while rights and titles have grown up under it to an extent not easily to foresee.

I think, therefore, that the court erred in excluding the said deed from the jury.

For the foregoing reasons I think the judgment of the circuit court should be reversed, and all the proceeding subsequent to the verdict of November 6th, 1863, set aside and annulled, and judgment entered in this court on said verdict of November 6th, 1863, for the plaintiffs, with costs to the plaintiffs in both courts.

MAXWELL, J., concurred to reverse the final judgment, because judgment should have been entered on the first verdict, but did not concur as to the admissibility of the excluded deed.

JUDGMENT REVERSED.