# WHEELING.

## LOW v. SETTLE.

Submitted January 19, 1883—Decided November 3, 1883.

(*SNYDER, JUDGE, Absent.)

1. A lawyer prosecuting a suit should be required to produce satisfactory evidence of his authority to do it in every case, where there is reasonable ground to apprehend, that he is proceeding without permission of the person, who stands on the record as plaintiff; and in case of his failure to produce such evidence the suit should be dismissed by the court.   (p. 392.)

2. But as the lawyer is an officer of the court acting under his official oath and responsible to the court for the proper and faithful discharge of his duty, the presumption is in favor of the authority of the lawyer to institute the suit; and therefore that will be regarded as satisfactory evidence, which falls short of what would be evidence of his authority, if that was a fact at issue in a suit, as all the court should ask in addition to the lawyer's official responsibility is such proof as will raise a reasonable presumption of his authority to bring the suit.   (p. 392.)

3. As a general rule a court ought not to entertain a motion for a rule against an attorney to show his authority to prosecute a suit, if the motion is made at a term, when the case is to be tried, when the issue has been made up at a former term, and when allowed at such a stage of the case, the affidavit, on which the rule is based, must at least state facts which render it highly probable, that the attorney is prosecuting the case without authority.   (p. 393.)

*Counsel below.

4. The verdict of a jury in an ejectment case is fatally defective, which finds, that the plaintiff is entitled to recover the land in the declaration mentioned, but which fails to specify the estate found in the plaintiff, even though the declaration states, that the plaintiff had been possessed of the land in fee. (p. 395.)

5. If there be a demurrer to the evidence, the jury should find alternative verdicts. (p. 402.)

6. If the jury find, that, if the law is for the defendant, then the defendant is entitled to hold a certain specified portion of the land in his declaration mentioned, and that he has no title to any other land described in the declaration, such verdict is fatally defective, as it does not find, that the plaintiff is entitled to the portion of the land, to which the defendant has no title, and therefore fails to find, whether the defendant has a right to hold or not. (p. 403.)

Green, Judge, furnishes the following statement of the case:

This is an action of ejectment brought by A. A. Low against Harrison Settle in the circuit court of Fayette county in February 1881. The declaration alleged, that on January 1, 1877, the plaintiff was possessed in fee of two certain tracts of land in said county conveying respectively four thousand seven hundred and ninety-two acres and one hundred and seven perches and five hundred and thirty-seven acres, the boundaries of each of which tracts of land are set out at length, and the declaration concludes, that the defendant afterwards, to-wit on January 10, 1877, entered into such tracts of land and unlawfully withholds from the plaintiff the possession of a part thereof to the plaintiff's damages five hundred dollars, and therefore he sues. This declaration with the proper notice was duly served on the defendant. On March 3, 1881, the defendant pleaded not guilty to this declaration, and on plaintiff's motion the usual order of hearing was made by the court. On the 25th of April, 1881, the surveyor filed his report, in which report the surveyor states, that he went upon the lands in controversy on the 21st day of April, 1881, and at the request of Wm. G. Thurmond as the representative of the plaintiff, ran certain lines and did certain surveying specified. This report contained a survey and map of each of the tracts of land described in the declaration; and one of the corners is stated to be a corner

of a tract of fifty acres of land conveyed to the defendant. A map was returned with the survey, on which was laid down each of the tracts claimed in the declaration by the plaintiff, and also a tract of fifty acres, a rectangle, included in red lines bounded by figures 5 and 6, being a parcel of land conveyed by Samuel Price, executor of Sarah Stuart, to the defendant by a deed dated April 3, 1874, and which tract cornered on New river and was a part of the larger tract named in the declaration. During the progress of the case the plaintiff entered of record a disclaimer of title to this parcel of fifty acres. On May 17, 1881, on motion of defendant the court gave him leave to make further surveying at his own cost, and the case was continued at his costs.

On September 22, 1881, the defendant suggested that the plaintiff was a non-resident and asked for a rule against him for costs, and this security for costs was given, and on the next day, the case being then ready for trial, the defendant moved for a rule against the plaintiff's attorneys to show by what authority they had brought and were prosecuting this suit. The court refused to grant this rule, and the defendant excepted to this action of the court. This motion was based entirely on the following affidavit:

"The defendant, Harrison Settle, being sworn, says that the plaintiff in the above suit is, as he verily believes, a non-resident of this State, and that he believes the attorneys who have brought and are conducting this suit have not seen and consulted personally with the plaintiff, and that the said attorneys have not communicated by letter directly with the plaintiff, and that the authority that they have is derived from some person or persons other than the plaintiff, and who have no sufficient authority from the plaintiff, and affiant verily believes that the plaintiff does not know of the existence of this suit, and that the attorneys who prosecute the same have not sufficient authority therefor, and he asks that they be compelled to show by what authority they prosecute this suit in the name of A. A. Low.

his<br>"HARRISON &#10005; SETTLE."<br>mark.

The case was then continued at the costs of the defendant; and, it being the second continuance, on motion of the plain-

tiff judgment and execution for these costs of continuance were awarded in favor of the plaintiff against the defendant. No additional surveying was ever done by the defendant and on February 28, 1882, the jury were sworn to try the issue on the plea of not guilty. The trial of the case lasted several days, and after all the evidence was introduced, on March 4, 1882, the plaintiff demurred to the evidence, and the defendant joined in the demurrer. The evidence need not be stated at length, as from the views of this Court we can not consider it and decide this case on its merits. It will therefore suffice to state the character of the controversy between the parties as disclosed by this evidence.

It was admitted by the parties, that both tracts of land named in the declaration were prior to 1837 owned by Sarah Stuart; that one Seth Huse purchased of her in that year fifty acres, a portion of the larger tract, but its boundaries were to a large extent left undefined, and no deed was made for this fifty acres till April 5, 1874, when a deed was executed for it by Samuel Price, executor of Sarah Stuart deceased, to the defendant Harrison Settle, who had purchased this fifty acres of Seth Huse, and this is the parcel of land to which the plaintiff formally disclaimed title. The evidence showed, that the plaintiff had a perfect title to the whole of the two tracts named in the declaration, which title he also derived through Sarah Stuart, excepting the fifty acres, which had been sold to Seth Huse, and that the real controversy in this case was, where the fifty acres of this land owned by the defendant was located, the plaintiff contending that its location was set out in this deed from Price, executor of Sarah Stuart, and the defendant contending that there was an error in the boundaries of this fifty acres as set out in this deed, and that according to its true location it included some fourteen or fifteen acres lying on New river and improved, and which was not included in the boundaries of this fifty acres as set out in the deed to the defendant from Price, executor of Sarah Stuart. The boundary of this fifty acres, as claimed by the defendant, was laid down on a map referred to by Samuel Price in his evidence and also referred to by Harvey Handley in his deposition, and was marked on this map by lines containing a certain figure within which is written

"fifty acres—Harrison Settle." The jury on the evidence all of which was set out in the demurrer to the evidence found the following verdict:

"We, the jury, find that if the law is for the plaintiff, that he is entitled to recover, as shown in the plat of H. J. Tucker, filed in this cause and read to the jury, the land in the plaintiff's declaration mentioned, except the fifty acres included within the red lines bounded by the figures 5 and 6, being the land conveyed by the deed from Samuel Price, executor, to the defendant, dated April 3, 1874, the title to which the plaintiff has filed in this cause a disclaimer in writing; and we find that if the plaintiff has not a right to recover, but that the defendant is entitled to hold the land shown in the map or plat referred to by Samuel Price in his evidence and referred to by Harvey Handley in his deposition by the figure within the lines of which is written, "fifty acres—Harrison Settle," and that said land is bounded and described as follows, to-wit: Beginning at a locust and red oak on the bank of New river, and thence up the river with the meanders thereof to a poplar corner on the river, in the patent line, between the surveys of Stuart and Reed and that of Banks; and thence with that patent line towards the mountain far enough so that a line run from the locust and red oak corner, and parallel with the Banks patent line, will include fifty acres of land; and that he has no title to any other land described in the declaration."

And the court thereupon sustained the plaintiff's demurrer to the evidence and entered up the following judgment:

"And the court having heard the argument of counsel on the demurrer to the evidence, is of opinion and doth decide that said demurrer is well taken and is sustained. It is therefore considered by the court that the plaintiff recover against the defendant the land found for him by the verdict of the jury aforesaid and his costs by him about his suit in this behalf expended. Whereupon the plaintiff prays a writ to the sheriff of this county to be directed to cause him to have his possession of the land recovered by him as aforesaid, returnable here, &c."

The defendant excepted to this judgment and moved the court to grant him a new trial, which the court refused to do;

and to this action of the court the defendant filed a bill of exceptions, in which all the evidence is set out. To this judgment of the court the defendant obtained a writ of error.

*J. W. Davis* for plaintiff in error.

*W. H. Hogeman* for defendant in error.

Green, Judge:

The first question for our consideration presented by this record is: Did the circuit court err in refusing to grant on the affidavit of the defendant a rule against the attorneys of the plaintiff to show by what authority they had brought and prosecuted this suit? A lawyer prosecuting a suit should be required to produce satisfactory evidence of his authority to do it in every case, when there is reasonable ground to apprehend, that he is proceeding without permission of the individual, who stands on the record as plaintiff, and in case of his failure to produce such evidence the suit should be dismissed by the court. See *Bell & Conway* v. *Wilson*, 6 J. J. Marsh. 495; *Mc. Alexander* v. *Wright*, 3 Mon. 190. But in every such case the presumption is in favor of the authority of the lawyer to institute and prosecute the suit; for he is an officer of the court acting under his official oath and responsible to the court for the proper and faithful discharge of his duties, and though when required he must produce *satisfactory* evidence of his authority, yet that will be regarded as satisfactory evidence, which would fall short of what would be evidence of such authority, if that were a fact in issue in the suit; thus no power of attorney authenticated in due form of law and indeed no power of attorney of any sort is in such case required; any written communication by letter or otherwise either giving authority or recognizing it would in such case be ample evidence, and indeed any parol proof of any sort of this fact would suffice, as all the court asks in addition to the attorney's official responsibility is such proof, as will raise a reasonable presumption of the existence of such authority. See *Rogers* v. *Lessee of Park, et al.*, 4 Humph. 482. In such a motion the burden of proof is on the defendant to show, that the attorney for the plaintiff has

no authority to prosecute the suit, the presumption being in his favor. See *Esley* v. *People of Illinois*, 23 Kan. (Randolph) 513.

It is obvious too that as a general rule a motion of this kind ought to be required to be made at an early stage of the case, and before the term of court, at which the trial of issue made up at a former term is expected to be had; for otherwise the defendant might by such a motion and by the obtaining of such a rule procure a continuance of case to the prejudice of the plaintiff, and if this was allowed as a rule, it would hold out a strong temptation to the defendant to make application for such rules against the attorney of the plaintiff not with a view of preventing an abuse of the process of the court, but with a view of obtaining a continuance of the case, when he doubted whether he could otherwise procure such continuance.

It is unnecessary in this case to determine, whether in any case such a rule should be issued by the court, when the issue had been made up at a former term, and the case was on the docket for trial at the term, when such a rule is asked by the defendant; and we therefore decline to say or consider under what circumstances such rule should be awarded, when the motion is made at so late a stage. In some States as in Pennsylvania it would be refused under almost any circumstances. See *Mercier* v. *Mercier*, 2 Dall. 142; *Campbell* v. *Galbreath*, 5 Watts 427. We are however prepared to say, that if made at such a stage of the case, the rule ought not to be awarded requiring the plaintiff's attorney to show by what authority he prosecutes the suit, unless the affidavit, on which the rule is based, at least states facts, which render it highly probable, that the plaintiff's attorney is abusing the process of the court and prosecuting the case without authority.

Applying this law to the case before us, it is obvious that the court did not err in refusing to award this rule against the plaintiff's attorney in this case. The affidavit, on which alone the rule was asked, was made by the defendant himself; it was made at a term of the court, at which the case was to be tried; it was made too under circumstances, which justly excited the suspicion, that it was made only with a

view of obtaining a continuance of the case at that term, for the case had been at a previous term continued on the defendant's motion and at his costs on the allegation, that he wanted to have additional surveying done in the case, and yet he had not any such additional surveying done, and this certainly justified the suspicion, that the former continuance had been procured by the defendant by misleading the court as to the necessity of such additional surveying; and the court was justified in seeing that the defendant did not get another continuance by pretending to doubt and·call in question the authority of the plaintiff's attorneys to prosecute this suit. And certainly there was nothing in the affidavit of the defendant to induce the belief, that he was not again attempting to mislead the court in order to get another continuance; for he did not allege a single fact, which tended in any degree to raise a suspicion, that the attorneys of the plaintiff were prosecuting this suit without authority or indeed any fact at all. The affidavit only alleged, that he believed the attorneys of the plaintiff had not seen or consulted personally with the plaintiff, a non-resident, and that he believed they had not communicated *directly* with the plaintiff by letter, and that the authority they had was derived from some person or persons, who had no *sufficient* authority from the plaintiff, who, the defendant verily believes, does not know of the existence of this suit. It is obvious, that if these *beliefs* of the defendant were mere pretenses to obtain a continuance, it would have been almost impossible to convict him of perjury no matter how false his allegations of these beliefs might be. And against this he was well prepared, as he does not even say he believes that the agent or agents of the plaintiff, who employed the attorney in this case, had no authority from the plaintiff to employ counsel in this case; but that his authority was not *sufficient.*

If the plaintiff, a non-resident, had an agent or agents to look after and manage his very large real estate lying in this State, and such agent or agents had exercised over it all the powers and authority usually exercised by owners themselves, yet the defendant, an ignorant man, who could not write his name, might safely say, that he believed as a matter of law, that such agent or agents had not sufficient authority to in-

stitute suits to prevent trespass on such lands, and that a regular power of attorney formally executed by the plaintiff, the owner of such lands, was necessary to confer sufficient authority on such agent or agents to employ counsel to bring such a suit.   In this case the circuit court had good reason to believe, that such were the views of the law entertained by this ignorant defendant.   For the court know by the surveyor's report in this case, that the plaintiff did have an agent in this State looking after this very land, and that this agent was paying personal attention to this suit and aiding the attorneys for the plaintiff in preparing the case for trial, the surveyor having reported that all the surveying done in this case had been done at the request of an agent of the plaintiff. The circuit court therefore did not err in refusing to issue a rule against the attorneys for the plaintiff to show the authority on which they instituted and prosecuted this suit in the name of the plaintiff.

The next enquiry in this case is: Was the verdict of the jury so vague and defective, that the circuit court could not properly render any judgment upon it?   There are in this verdict three defects:   1st, The jury finds, that *if the law is for the plaintiff*, he is entitled to recover the land in the declaration mentioned, except a certain parcel of fifty acres described in the verdict.   Is this portion of the verdict so defective, that, if the court on the demurrer to the evidence should hold, that the law was for the plaintiff, any judgment could properly be entered up for the plaintiff?   Section 27 of chapter 90, of the Code which is the same as section 27 of chapter 136 of Code of Virginia, from which it is copied, provides that "the verdict shall also specify the estate found in the plaintiff, whether it be in fee or for life, stating for whose life, or whether it be for a term of years, and specifying the duration of such term."   The verdict fails to specify the estate found in the plaintiff, as required by this section. Is this such a fatal defect, that no judgment for the plaintiff could be rendered on such a verdict?

This chapter in our Code and in the Code of Virginia on ejectment abolishes the writ of right (see § 38 p. 522) and in lieu of it is substituted this action of ejectment, which after the passage of the Code could be brought, not only when

396 LOW v. SETTLE. [Sup. Ct.

prior thereto an action of ejectment lay, but also in any case in which a writ of right might have been brought prior to July 1, 1850, in the State of Virginia, that being the day on which the Code of Virginia took effect. (See §§ 1 and 2 of ch. 90 of Code of West Va. p. 518.) Now the verdict and judgment in a writ of right was essentially different from that in an action of ejectment. The verdict in a writ of right being, if for the demandant, that he hath more right to have the tenement, which he demandeth against the tenant by his writ of right, then the tenant hath to hold it as he holds it; and the judgment on this verdict was that he recover against the tenant his seizin of the premises to hold to him the said demandant and his heirs, quit of the said tenant and his heirs forever. (See 1 Rob. Pr. p. 478 and 479; 1 R. C. of 1819 p. 464.) In ejectment, if the verdict was for the plaintiff, the judgment was that he recover against the defendant his term yet to come of and in the premises in the declaration mentioned. (See 1 Rob. Pr. p. 462.) When by the Code of Virginia and our Code the same form of action, ejectment, was to be used, where before either a writ of right or ejectment lay, it of course became necessary for the statute-law to provide what was to be in substance the form of the verdict and of the judgment; and this form had to be such as would be proper when the suit was one, for which a writ of right formerly lay, and when it was one in which ejectment would formerly have been the remedy. Hence the Code of Virginia and West Virginia provided, as we have seen, that the verdict should specify the estate found for the plaintiff, whether it be in fee, for life or for a term of years. This provision was taken from the then law of New York. (Revised Statutes of New York of 1827 and 1828, vol. 2 part 3 ch. 5 § 30 sub-division 7 p. 307).

In adopting this great change in the action of ejectment in Tennessee their statute provided that "a general verdict in favor of the plaintiff without any specification entitles the plaintiff to the quantity of interest or estate and the premises as set forth in the declaration." See Code of Tenn. 1858, title 2 ch. 1 §§ 3250, 3258; Tyler on Ejectment p. 793. But no such statutory provision has been inserted in our law. And as by the very terms of this twenty-seventh section and

of the twenty-ninth section of chapter 90 of the Code the plaintiff may recover but a term of years, though his declaration claimed a fee simple, it seems absolutely necessary under our statute, that the verdict should specify the estate found, as the statute expressly provided in this twenty-seventh section; and if the verdict fails so to specify, it cannot be assumed, that the estate intended to be found was that named in the declaration, as by the Tennessee statute it is expressly provided it shall be, when the verdict is for the plaintiff without any specification.

It is true that in *Hawley* v. *Twyman, Trustee,* 24 Gratt. 516, where the declaration stated that the plaintiff was possessed in *fee simple* of a certain tract of land described by metes and bounds, and that the defendant entered on the premises and unlawfully withholds them and on the issue made up on a plea of "not guilty" the jury found as follows: "We the jury upon the issue joined find, that the defendant is guilty in manner and form as the plaintiff in his declaration hath complained and a new trial was asked because the verdict did not specify the estate found in the plaintiff." A majority of the court held, that this verdict did find that plaintiff was entitled to a *fee simple* in the land claimed, because the defendant by the verdict was found guilty in the *manner and form,* as the plaintiff had in his declaration complained, that the estate of the plaintiff as well as the unlawful withholding of the land was in issue, and therefore the verdict of the jury for the plaintiff in the manner named in the declaration was a verdict, not only that the defendant unlawfully withheld from the plaintiff the land named in the declaration, but also that the plaintiff's estate in it was a *fee simple,* because it was so claimed in the declaration and the verdict was that the defendant was guilty in the *manner and form* complained of in the declaration. One of the judges dissented in this case; and I must confess, that it seems to me, that by the words, guilty in *manner and form* as the plaintiff in his declaration has complained, the jury ought to be understood as finding simply, that the defendant was guilty of *unlawfully* withholding the premises specified in the declaration. That by the words the "manner" of withholding "as the plaintiff in his declaration has complained" the

jury meant, that as the plaintiff had complained that certain specified premises had been *unlawfully* withheld, so they found not only that the specified premises were withheld, but that they were withheld in the manner and form in which the declaration claimed that these premises were withheld, that is, *unlawfully*. It seems to me a very strained construction of this verdict to hold, that the jury had found everything with reference to the *estate* of the plaintiff in this land. The opinion of the majority of the court rendered by Judge Staples shows on its face, that they were aware, that they had placed on this verdict a strained construction of its language. This was done because of the peculiar hardship, which in that particular case would result from such a construction of the. language of the verdict, as seems to me to be natural. Judge Staples says:

"It must be admitted a finding of that sort is not a literal compliance with the statute, and it is only by a somewhat strained construction of its language that the verdict can be sustained at all. This the court feels warranted in adopting purely from a strong conviction that it is absolutely necessary in the interest of justice. This is the second suit for a small tract of land—trust-property to which the plaintiff has an unquestionable title. The defendant does not pretend to have any claim to it legal or equitable. The first suit failed for want of a preliminary notice which the plaintiff ought to have given. And now the second is very near sharing the same fate, because the jury were not instructed as to the form of their verdict, although it is prescribed by the statute, and is of the simplest character. This court though unwilling to visit upon the plaintiff the consequences of a mere mistake in form, in no way affecting the merits of the case, deems it proper to express its disapproval of the loose and unjustifiable practice pursued in the conduct of this cause."

It does seem to me that the reasons given for in effect sustaining and upholding such loose and unjustifiable practice as the violation of the express provisions of a statute, which were of the simplest character, are of a very unsatisfactory character. Upon what principle the court could, in construing the language of the verdict of a jury, look at the evidence in the case, it is hard to conceive. It seems to me, that the

court must have given the same construction to the language of the verdict of the jury, had the evidence·shown that the defendant was entitled to the land, or that the plaintiff had title to it for only a year. While therefore we disapprove of the reasoning of the court above quoted, we do not mean to say, that the declaration, plea and issue joined may not be looked at in construing the language of the jury in their verdict, yet if we confine ourselves to this, I must say that I greatly doubt, whether the verdict of the jury was correctly construed in that case. I do not deem it however necessary to determine definitely, that the verdict of the jury could not be interpreted as it was by the Virginia court of appeals in that case; but I can safely say that its language was strained to. sustain this verdict, and that to strain the language of a jury, to sustain a verdict, to an extent greater than it was strained in that case can not be justifiable. To sustain the verdict in the case before us we would be called upon to strain its language to a much greater extent than was done ·in that case. This verdict does not as in the Virginia case "find that the defendant is guilty in the *manner and form* as the plaintiff in his declaration has complained." But it simply finds, that if the law is for the plaintiff "he is entitled to recover the land in the plaintiff's declaration mentioned &c." There can be no doubt as to the meaning of this language. The declaration is referred to in this verdict unquestionably for the sole purpose of showing the boundaries of the land, to which the plaintiff is entitled; and it is impossible by any straining of the language to hold, that it means to specify, as the statute expressly requires, the estate of the plaintiff whether in fee, for life or for a term of years, though the declaration does say the plaintiff was possessed in fee of this land. This verdict then failing to find what was the estate of the plaintiff in this land, it was so defective, that the court ought not to have entered up on it a judgment for the plaintiff.

Since writing the above my attention has been called to the case of *Elliot et al.* v. *Suter*, 3 W. Va. 38, in which it was decided, that "in ejectment, where land is claimed in fee ·simple, a verdict finding for the plaintiff so much of the land as is included in the lines S. P., P. A., A. G. and G. S. as delineated on the plat of survey made in this cause, is

sufficient to warrant a judgment thereon, without finding the character of the estate, under which the plaintiffs claim. The plaintiff alone has a right to complain and have the verdict find the character of the estate, when in his favor." This decision seems to me clearly erroneous for the reasons above stated. There are in the opinion of the Court delivered by the president but two authorities referred to in aid of this portion of its decision. They are *Murray* v. *O'Neal,* 1 Call. 246, and *Tapscott* v. *Cobb,* 11 Gratt. 172. In the first of these cases it was decided, that "if in ejectment the jury 'find for the plaintiff one cent damages,' the court may extend the verdict and make it read 'we of the jury find for the plaintiff these lands in the declaration mentioned and one cent damages.'" This case was decided in 1798. The action of ejectment then was a mere possessory action and could not be brought to determine the "mere right to the land" as between the plaintiff and defendant. Then this action was never conclusive on either the plaintiff or the defendant, but no sooner was it decided, than another ejectment might be brought by the unsuccessful party. The statute-law prescribed no form of the verdict in such a suit then. But now the action of ejectment, as we have seen, is no longer a mere possessory action, but it may now by statute be brought whenever formerly a writ of right might have been brought. Because of this change in the character of this action the statute prescribes the form of the verdict and judgment; for by a loose or general verdict it would be impossible to tell from the record, whether the mere right to the land was in controversy or only a right to its temporary possession. It seems to me obvious, that the court did right in rendering the decision it did in the case of *McMurray* v. *Oneal,* 1 Call. 246. But this decision, it does seem to me, throws no sort of light on the question before us. The form of a verdict in 1798 in an action of ejectment sheds no more light on what should be its form since the entire change in the character of the action by statute, than would the form of the verdict in an action of debt or any other action.

The substance of the other case is stated in the opinion of the president in *Elliott* v. *Sutor,* 3 W. Va. 42. All he says in reference to it is, that "according to the case of *Tapscott* v.

*Cobb*, 11 Gratt. 172, a party in peaceable possession, when entered upon and ousted by one not having title to or authority to enter on the land, may recover the premises in ejectment on his possession merely, and his right to recover can not be resisted by showing that there is or may be an outstanding title in another, but only by showing that the defendant himself has title or authority to enter under the title; and in such a case the utmost that the verdict could find would not impart a greater or more definite and certain estate in the plaintiff than the present verdict does. I think therefore the court erred in failing to enter judgment on said verdict for the plaintiff." The court in the case of *Elliott et al.* v. *Sutor*, failed to notice, that this case of *Tupscott* v. *Cobb et als.*, 11 Gratt. 172, though decided 1854, was a case instituted in February, 1846, and was decided therefore on the principles governing actions of ejectment prior to the Code of Virginia of 1849. Like the case of *McMurray* v. *Oneal*, 1 Call 246, it seems to me to throw no light upon the form of a verdict in ejectment under the Code of Virginia and West Virginia.

The court in the case of *Elliott et al.* v. *Sutor*, 3 W. Va. 37, seem to have lost sight of the great change in the character of the action produced by the Code of Virginia of 1849 and the Code of West Virginia, and seem to have decided the case very much on grounds, which might have had some force, had the only change made by the Code of 1849 and our Code been simply the prescribing the form of the verdict. And from failing to note the fundamental changes in the action of ejectment produced by these Codes they conclude in effect, that when the statute-law prescribed the form of the verdict and required it to specify the estate found for the plaintiff whether in fee, for life or for years and the duration of the term, this provision should be regarded by the court as if it were inserted for the benefit of the plaintiff alone, and as if he alone can complain of the omission of the jury to find what estate the plaintiff is entitled to. I can not see how such a construction can be placed on the statute. If upon the evidence the plaintiff was entitled to the possession of the land for a year only, and then the defendant would be entitled to it in fee, is it not important to the defendant that

the jury in finding for the plaintiff should find that he had in
the land only a term of one year? This would be conclusive
on the plaintiff, if the defendant after the expiration of the
year sought by legal proceedings to get possession of his
land. But if the estate, to which the plaintiff is entitled in
the land, is not found by the jury as the statute expressly re-
quires, then the defendant in such second suit could not by
the verdict and judgment show that the plaintiff's estate in
the land had expired, but would have to litigate this *de novo;*
and it might be that this was all the matter, which ever was
in dispute between them. The defendant may have had a
clear and indisputable estate in fee, and and the plaintiff may
have been his tenant, and the defendant may have entered
on him claiming that the tenancy was expired. The jury
find for the plaintiff. Has not the defendant a direct and
material interest, that the verdict and judgment should, as
the statute requires, specify the estate of the plaintiff? If it
does not, the controversy between the parties will still be
left open; and the defendant has as much interest as the
plaintiff, that such controversy should be ended by the first
verdict and judgment. I conclude therefore, that the case or
*Elliott et ux.* v. *Suter,* 3 W. Va. 37 was not thoroughly con-
sidered by the Court and ought not to be followed in the re-
spect in which it differs from the views herein expressed.

The residue of this verdict was still more defective having
found in a certain way and to a certain extent for the plain-
tiff, *if the law on the demurrer to evidence was for the plaintiff.*
It was the duty of the jury to have found differently and in
some specified manner, *if the law on the demurrer to the evi-
dence was for the defendant.* But instead of so doing they
found differently, *if the plaintiff has not a right to recover.* But
this alternative is very different from the one, on which they
should have found their alternative verdict. For though the
law involved in the demurrer to the evidence had been for
the defendant, the plaintiff might still well be entitled to re-
cover. And we may take this very case as an illustration of
this position for the plaintiff was on the evidence unquestion-
ably entitled to recover, though the law had been for the de-
fendant. The only difference in his recovery being, that if
the law was for the plaintiff, he was entitled to recover a

portion of the land described in the declaration, and if the law was for the defendant, he was entitled likewise to recover a portion of said land, but it would have been a different and less valuable portion of the land in the declaration claimed. But even if the language of the verdict had been, as it should have been, "if the law is for the defendant" instead "if the plaintiff has not a right to recover," yet the verdict in this alternative would have been fatally defective, because it finds that the defendant is entitled to hold a specified fifty acres, but fails utterly to find, who is entitled to hold all the residue of the lands in the declaration mentioned amounting to upwards of four thousand two hundred and seventy-nine acres. It is true in the second alternative the verdict does find, that beside this' specified fifty acres "the defendant has no title to any other land described in the declaration." But it does not follow, that he is not entitled to hold the whole of this large residue of the land described in the declaration against the plaintiff. He has, though he had not title thereto, a clear right to hold the whole of the residue of this land against the plaintiff, unless the plaintiff had title thereto. And in this alternative verdict the jury wholly fail to find, that the plaintiff had any title to this residue of the land described in the declaration. The portion of the verdict therefore based on the supposition that the law on the demurrer to the evidence was for the defendant is more obviously so defective as to render it impossible for a judgment to be properly entered upon it than was the portion of the verdict based on the supposition that the law on the demurrer to the evidence was for the plaintiff. Upon this verdict therefore it was impossible for the court properly to enter up any judgment whether the law on the demurrer to the evidence was for the plaintiff or defendant.

Without thus considering, whether on this demurrer to the evidence the law was for the plaintiff or defendant, the judgment entered up by the circuit court on this fatally defective verdict must be set aside, reversed and annulled, and the verdict of the jury must be set aside, and a new trial awarded; and as no new trial can be had except on the evidence, which may be submitted to the jury on this second trial excluding from it all the evidence set forth in the demurrer to the evi-

dence, which may not be again on the second trial brought
before the jury, it must follow, that the demurrer to the evi-
dence must also be set aside and annulled, and the cause must
be remanded to the circuit court for a new trial to be had;
and the plaintiff in error must recover of the defendant in
error his costs in this Court expended, the costs in the circuit
court to abide the final decision of the case. We decline to
express any opinion on the question, whether the defendant
in this case would properly have been compelled to join in
the demurrer to the evidence by the plaintiff, both because
upon the new trial the evidence may be so varied, that the
plaintiff may not demur to it, and also because, so far as this
record shows, the defendant was not required by the circuit
court to join in this demurrer, but on the contrary he appears
to have done so voluntarily.

The judgment of the circuit court must be reversed, the
demurrer to the evidence as well as the verdict of the jury.
must be set aside, and a new trial must be awarded, the costs
of the former trial to abide the final decision of the case, and
the plaintiff in error must recover of the defendant in error
his costs in this Court expended.

Judges Johnson and Woods Concurred.

Judgment Reversed.    Case Remanded.