# CHARLESTON.

R. R. YONKER *et al.* v. ALTON GRIMM

(No. 5603)

Submitted May 19, 1926.    Decided June 1, 1926.

1.  TRIAL—*Power of Jury Over Verdict Ceases on Their Discharge; When Jury Assents to Verdict Returned by Them and Received by Court, Though it is Not Recorded, and Court Announces Their Discharge and They Leave Presence of Court, Neither With Nor Without Consent of Court Can They Amend or Alter Verdict.*

    The power of a jury over their verdict ceases on their discharge. With their assent to the verdict returned by them and received by the court, though not recorded, and the court announces their discharge, and they leave the presence of the court, their functions as jurors have ended, and neither with nor without consent of the court can they amend or alter their verdict.   (p. 716.)

    (Trial, 38 Cyc. p. 1893 [Anno])

2.  EJECTMENT—*Verdict in Ejectment for Plaintiff, Failing to Specify Estate Found in Him, is Fatally Defective, Though Declaration States Plaintiff Had Been Possessed of Land in Fee (Code, c. 90, § 27).*

    The verdict of a jury in an ejectment case is fatally defective which finds that the plaintiff is entitled to recover

the land described in their verdict, but which fails to specify the estate found in the plaintiff, as required by the statute, even though the declaration states that the plaintiff had been possessed of the land in fee.   (p. 717.)

(Ejectment, 19 C. J. § 288.)

3.  SAME—*Where Verdict in Ejectment Case Did Not Specify Estate in Plaintiff, Court Has No Power to Amend it by Inserting Estate (Code, c. 90, § 27).*

In such case it is beyond the power of the court to amend the verdict by inserting the estate found in the plaintiff, for such act would be an invasion of the province of the jury by substituting the court's verdict for theirs.   (p. 719.)

(Ejectment, 19 C. J. § 292.)

4.  DEEDS—*Parties to Deed Are Presumed to Have in Mind Actual State of Property at Time of Execution, and Are Supposed to Refer to This for Proper Definition of Terms Used in Description.*

The parties to a deed are presumed to have in mind the actual state of the property conveyed at the time of the execution of the deed, and therefore are supposed to refer to this for a proper definition of the terms used in the descriptive words.   (p. 719.)

(Deeds, 18 C. J. § 248.)

5.  BOUNDARIES—DEEDS—*Deed is Interpreted and Construed as of its Date; Call in Description for Land of Another As Monument is Call for True Location of Such Land at Date of Deed.*

A deed is to be interpreted and construed as of its date, and a call in the descriptive portion thereof for the land of another, as a monument, is a call for the true location of such land at the date of the deed.   (p. 719.)

(Boundaries, 9 C. J. § 148; Deeds, 18 C. J. § 248.)

6.  BOUNDARIES—

Where the deed under which plaintiffs claim in an action of ejectment calls for the land of defendant, the true line of defendant's land at the time of the deed must be understood to have been intended.   (p. 719.)

(Boundaries, 9 C. J. § 148.)

7.  EJECTMENT—*Where Deed Under Which Plaintiff Claims in Ejectment Calls for Land of Defendant, Burden is on*

*Plaintiff to Establish Such Line to Satisfaction of Jury, Who by Verdict Must find True Location Thereof.*

The burden is on the plaintiff to establish such line to the satisfaction of the jury, who by their verdict must find the true location thereof.   (p. 720.)

(Ejectment, 19 C. J. §§ 201, 287.

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mason County.

Ejectment by R. R. Yonker and others against Alton Grimm.   Judgment for plaintiff, and defendant brings error. *Judgment reversed; verdict set aside; new trial awarded.*

*Hogg & Hogg,* for plaintiff in error.

*F. G. Musgrave* and *B. H. Blagg,* for defendants in error.

WOODS, JUDGE:

The plaintiffs sued in ejectment to recover six and one-half acres of land.   Both plaintiffs and defendant claimed from a common source.   Samuel Hoffman; by deed dated March 13, 1875, conveyed, in fee, to his daughter, Caroline Rousch, thirty and one-fourth acres, bounded as follows: "Beginning at a stake and corner to said Samuel Hoffman's 60½-acre tract of land and also corner now to A. H. Yonker and with a line of same S 89° E 148 poles to Broad Run Creek; thence up the same 39¾ poles to a stake corner to lot No. 2 this day conveyed to Emeliza Hoffman; thence with a line of same N 85 W 142½ poles to a stake in the back line and thence with the same N. 15° W. 28¼ poles to the beginning, containing 30¼ acres more or less."   This tract descended by various mesne conveyances, in which the boundaries were set forth in each as above, until it became vested, together with other contiguous tracts, in fee, in George M. Parsons.   On September 11, 1923, by deed of that date, the said Parsons conveyed a part of his holdings under his deed to the plaintiffs, R. R. and D. K. Yonker.   The land so conveyed is described as follows: "Being that part of what was formerly the Alfred Yonker farm, lying on Broad Run creek on the easterly side of the public road, bounded on the westerly side by the public

road, on the northerly side by the lands of Kenneth Yonker and Robert Yonker, on the easterly side by the lands of said Yonkers and Alton Grimm, and on the south by said Alton Grimm, and estimated to contain six and one-half acres, more or less.'' The declaration in this case described the premises in the language of the last mentioned deed.

On the same day (March 13, 1875) that Samuel Hoffman conveyed the thirty and one-fourth acres to his daughter, as aforesaid, he conveyed by deed another part of his land in fee to his son, Albert Hoffman. The boundaries of this tract were as follows: ''Beginning at a stake corner to lot No. 2 this day conveyed to Philip Hoffman in the back line of said Hoffman's survey thence with a line of lot No. 2 N. 70° W. 170 poles to a stake near the creek; thence N. 13° E. 41 poles to a stone corner to Samson Hoffman's heirs; thence with a line of same S. 82° E. 50 poles to a stake; thence S. 37° E. 80 poles to a stump and locust; thence S. 66° E. 20 poles to a rock thence S. 83° 37 poles & 20 links to a double maple in the back line and thence with the same S. 15° W. 20 poles to the beginning, containing (31¾) thirty-one and three-fourth acres & 31 poles, more or less.'' This same tract, by a number of transfers, containing the same description of boundaries, came into possession of the defendant, Alton Grimm, by deed dated March 22, 1920.

It will be noted that the deeds under which both plaintiffs and defendant claim were made the same day. The tracts abut each other. The abutting line is described in the deed of the defendant as from ''a stake near the creek; thence N. 13° E. 41 poles to a stone corner to Sampson Hoffman's heirs.'' The deeds of the predecessors in title of the plaintiffs described the abutting line: ''To Broad Run Creek, thence up the same 39¾ poles to a stake corner to lot No. 2 this day conveyed to Emeliza Hoffman.'' But the immediate predecessor in title to the plaintiffs conveyed by the boundaries of adjoining lands, of which the defendant's land was one. In this latter deed the land of the defendant, Alton Grimm, is called for as the easterly boundary; instead of the line described in his predecessor's title as: ''to Broad Run Creek, thence up the same 39¾ poles to a stake corner to lot

No. 2 this day conveyed to Emeliza Hoffman." By their deed, and the declaration, the plaintiffs are confined for the eastern boundary of their land to the line of the defendant Alton Grimm.

The case was tried before a jury under the plea of not guilty. The recovery was only for the one-half acre actually in dispute. While the defendant did not disclaim the remaining portion of the premises described in the declaration, the error was cured by reason of the plaintiffs' not taking a verdict for the balance of the land to which they would have been entitled in any event under the evidence.

The jury returned a verdict: "We the jurors find said piece of land in dispute to be property of R. R. Yonker and D. K. Yonker without damage from Alton Grimm." The verdict was put in the following form after the jury returned into court: "We, the jury, find for the plaintiff that part of the land in controversy in this suit, bounded and described as follows: Beginning at the point marked B in the plat filed by G. E. Childs, C. E., in this case, thence S. 85° east about 9 poles to a point marked M in said plat; thence to the Broad Run Creek at the point marked L on the plat aforesaid; thence following the meanderings of the said creek to the point B, the beginning." The defendant, by counsel, thereupon moved to set aside the verdict of the jury for reasons set out on the record, which motion was by the court overruled, and the jury discharged, not only from this particular case but from further service at the term of court. Three days later, before the final adjournment of the term, the court in the absence of defendant or his counsel, and before any order had been entered of record recording said verdict, directed the clerk to issue a summons summoning the jury to appear before the judge of the circuit court on the following day to serve as petit jurors. In pursuance to this summons the petit jurors, who had theretofore served in this case as a jury, appeared in court, and were placed in the jury box without being sworn or examined as to their qualifications to serve as jurors. Counsel for defendant objected to the re-impaneling of said jury after their discharge as aforesaid, which objection was overruled. The court proceeded to in-

struct the jury orally to the effect that the verdict brought in
four days before, through carelessness of counsel was not in
form required by the law of this State. It had failed to find
the estate in the land recovered. The jury retired to their
room and in a short time returned into court with the follow-
ing verdict: "We the jury, find for the plaintiffs, R. R.
Yonker and D. K. Yonker, that part of the lands in contro-
versy in this suit bounded and described as follows: Begin-
ning at a point marked B in the plat filed by G. E. Childs,
C. E., in this suit, thence S. 85° east about 9 poles to a point
marked M in said plat; thence to the Broad Run Creek at
the point marked L on the plat aforesaid; thence following
the meanderings of the said creek to the point B, the begin-
ning, the letter B in said plat. And we further find for the
plaintiffs an estate in fee therein, and that the defendant un-
lawfully withholds same from the plaintiffs." This verdict
was received and recorded. Counsel for defendant moved to
set aside the verdict and award the defendant a new trial.
Among numerous grounds assigned were these: That the ver-
dict was materially different from the one rendered upon the
trial four days before, and because the jury having been dis-
charged from further service in the case and for the present
term of the court, it could not be re-impaneled in this case to
render another verdict.          •

Independently of other questions this case turns on the
validity of this verdict. Did the court err in reassembling the
jury, and had it authority to render a new verdict? This
Court said in *State* v. *Cobbs*, 40 W. Va. 718: "The court may,
for good reason, return a jury to its room to further consider
and amend or alter its verdict, at any time before a verdict
is received by the court and the jury discharged." *Gibson's*
Case, 2 Va. Cas. 70, held that not until the court has received
for record the verdict is it perfected, and until then it may be
amended. This rule is followed by the Virginia court in
*Sledd's* Case, 19 Gratt. 813. This doctrine was applied in a
recent case in this State. *Lowther* v. *Ohio Valley Oil Com-
pany*, 88 W. Va. 650. 27 R. C. L. 895 states the rule: "The
power of a jury over their verdict, unlike that of the court,
ceases on their discharge. With their assent to the verdict

as recorded, their functions with respect to the case cease and the trial is closed, and after the verdict is received and the jury discharged the control of the jury is at an end and they cannot be recalled to alter or amend it.'' This seems to be the general rule. In harmony with this the Virginia Supreme Court, in *Melton* v. *Comm.*, 132 Va. 703, held that when the court announces the jury's discharge, and they leave the presence of the court, their functions as jurors have ended, and neither with nor without the consent of the court can they amend or alter their verdict. Although no mischief may have resulted to the parties from the amendment of the verdict in this particular case, under the circumstances stated in the record, we are unwilling by our judgment to establish such a precedent. The adoption of any other rule on this subject than that so plainly laid down by the courts of the country, and so long adhered to in the practice by the courts of our State, would be to open the door to abuses and lead to doubtful, if not mischievous results. But had the court a right to amend the verdict? A verdict in a civil case which is defective or erroneous in a mere matter of form, not affecting the merits or the rights of the parties, may be amended by the court to conform it to the issue and give effect to what the jury unmistakably find. 27 R. C. L. 887. This, as may be observed, goes to a matter of mere form. The judge cannot, under the guise of amending the verdict, invade the province of the jury or substitute his verdict for theirs. All the cases in which such amendments have been upheld are where the omission of words which are merely technical have been supplied by the court. But it is contended here that the new verdict rendered after re-impaneling the jury is materially and vitally different than the verdict first rendered. In the first verdict the jury entirely failed to ascertain the estate of the plaintiffs in the land sought to be recovered in this action; while in the last verdict they did find for the plaintiff an estate in fee therein and that the defendants unlawfully withheld the same from the plaintiffs. The right of the court to make the amendment is tested by the fact whether this change was merely formal or material. Our statute, § 27, Ch. 90, Code, provides that in a trial of ejectment the verdict shall specify the estate found in the plaintiff. We

specifically held in *Low* v. *Settle,* 22 W. Va. 387, that the verdict of the jury in an ejectment case is fatally defective which fails to specify an estate in accordance with the statute, even though the declaration states that the plaintiff possessed the land in fee. In this case *Elliott* v. *Sutor,* 3 W. Va. 37, was expressly overruled in so far as it was in conflict with this conclusion. In the latter case, it was held that it was not necessary to the validity of a verdict in ejectment that the jury find therein the estate of the plaintiff in the land sued for. The holding in *Low* v. *Settle, supra,* was followed and applied in *Oney* v. *Clendenin,* 28 W. Va. 34. Judge GREEN, speaking for the court in that case, said: "When the statute abolished the writ of right and permitted an action of ejectment to be brought, not only when an action of ejectment could formerly be brought but also in any case, in which a writ of right would formerly be brought * * * it became necessary that the statute should fix the form of the verdict in this new action of ejectment, as the verdict in an action of ejectment had always been different from that in a writ of right. This the statute did; and, if the verdict fails to find what estate in the land in the declaration mentioned is found, it cannot be held, as has been contended, that it should be treated, as though the verdict had specified that the plaintiff was entitled to a fee-simple estate in the land in the declaration mentioned, without danger under our statute of doing gross injustice to the defendant." Mr. Warvelle, in his treatise on Ejectment, in § 475, approves the rule here stated, citing this case, as well as others: *Long* v. *Linn,* 71 Ill. 152; *Shaw* v. *Hill,* 79 Mich. 86; *Lungren* v. *Brownlie,* 22 Fla. 491; *Betz* v. *Mullin,* 62 Ala. 365. Adopting this line of reasoning this court in *Oney* v. *Clendenin, supra,* held that the circuit court should have set aside such defective verdict and ordered a new trial of its own accord, and if it failed to do so, and entered up a judgment on such fatally defective verdict, the appellate court would reverse such judgment and direct a new trial, even though no new trial had been asked for in the court below. The doctrine announced in *Low* v. *Settle, supra,* finds support in *Rivier* v. *Pugh,* 7 Heisk, 715, and *Rogers* v. *Sinsheimer,* 50 N. Y. 646. In 1852 the Tennessee statute was

identical with our own in regard to the verdict in ejectment finding the estate of the plaintiff, and was held in *Pratt* v. *Philips,* 1 Snead. 543, to be imperative. If the first verdict of the jury was insufficient, the conclusion is inescapable that the amendment to the last verdict was a material one and beyond the power of the court to make. The jury must find the estate of the plaintiff in the premises he is entitled to recover. It is a duty enjoined upon it by statute. In the light of the foregoing authorities, the failure of the jury to incorporate in their verdict such finding is error, for which the case must be reversed.

The location of the westerly line of the Alton Grimm tract by virtue of the calls in the plaintiffs' deed and declared on in their declaration became the pivotal point in this litigation. This line's location, according to the plaintiffs would give the land in controversy to them. If it be located as defendant claims, his lands would include the premises set out in the jury verdict. The call for Grimm's land was locative. Where the grant calls for the line of another grant, the rule is that it must go to it, unless a natural object or marked tree is called for. *Dula* v. *McGhee,* 34 N. C. 332. Even points of the compass, specified in the deed, yield to adjoiners actually called for. *Stroup* v. *McCloskey* (Pa.), 10 Atl. 421. A grant must follow the line of an adjacent tract called for as its boundary, however much it may meander though it is represented as a straight line in the surveyor's plat. *Atkinson* v. *Anderson,* 3 McCord (S. C.) 223. Adjoining certain tracts means the same as to say to go and run with the lines of such tracts. *O'Dell* v. *Swaggerty* (Tenn.) 42 S. W. 175. The parties to a deed are presumed to have in mind the actual state of the property conveyed at the time of the execution of the deed, and therefore are supposed to refer to this for a proper definition of the terms used in the descriptive words. 2 Devlin on Deeds (3rd Ed.) § 1013d; 3 Washburn on Real Property, 384; *Dawson* v. *James,* 64 Ind. 162; *Scheible* v. *Slagle,* 89 Md. 823.

This Court held in *State* v. *Herold,* 76 W. Va. 537, that a deed is to be interpreted and construed as of its date, and a call in the descriptive portion thereof for an adjoining tract

of land is a call for the true location of such adjoining tract at the date of the deed. Let us make application of the two foregoing principles to the case under consideration. The predecessors in title of Parsons, as well as Parsons himself, were contending that the easterly boundary of the land in dispute here was Broad Run creek. The deed under which Parsons claimed, as already set out, so stated such boundary. The legal presumption is that Parsons by his grant claimed title to all the tract sold to the plaintiffs. Upon sound rules of construction, the call for the land of Grimm must be understood as a call for lands to which Grimm had title. 2 Devlin on Deeds (3rd Ed.) § 1034. Suppose, for instance, that according to Grimm's deed, the line in controversy is at the point west of Broad Run creek where he claims it is; that at the time the deed of Parsons to the plaintiffs was executed, he had conveyed by deed to Parsons the land between the line claimed by him and where plaintiffs would locate it—it would be apparent that under the plaintiffs' deed they would get title to it. It follows then as a logical sequence, if at the time of the deed Parsons and his predecessors in title had gained title to said strip by adverse possession, or by compromise or agreement, that Grimm's land called for in plaintiffs' deed would be at the point claimed by the plaintiffs. Hence the true line of Grimm's land obtaining at the time of the deed must be understood to have been intended. We believe the weight of authority sustains this proposition.

Under the well recognized rule that the plaintiff must prove the land claimed so far as the exterior boundaries are concerned, the burden is placed upon the plaintiffs in this case to prove the true boundary line of Grimm's land. This is a question for jury determination under all the facts and circumstances of the case under proper instructions. The verdict of the jury must find the true location. *Miller* v. *Holt,* 47 W. Va. 7.

Inasmuch as we grant a new trial, we make no comment upon the evidence, except to remark that it is not a case where we would be justified in upholding the verdict despite the errors of law. The application of the principles herein announced will make the instructions in the instant case in a

great measure inapplicable on another trial.  A discussion of them here will serve no useful purpose.

*Judgment reversed; verdict set aside; new trial awarded.*