# CHARLESTON.

ONEY *v.* CLENDENIN *et al.*

Submitted January 30, 1886.—Decided March 27, 1886.

1. The verdict of a jury in an ejectment case is fatally defective, which finds for the plaintiff the land in the declaration described, but which fails to specify the estate found in the plaintiff, even though the declaration states, that the plaintiff had been possessed of the land in fee. (p. 41.)

2. Upon such a verdict no judgment can be entered, and even without a motion in arrest of judgment or for a new trial the court should set aside such a verdict and award a new trial and if it does on such a verdict enter up a judgment for the plaintiff, on a writ of error the appellate court will reverse and set aside such judgment and award a new trial, whether the defendant moved the court for a new trial or not, or whether, if the defendant moved the court for a new trial, he based his motion solely on other specified grounds or included such defect in the verdict as one of the grounds on which he based his motion. (p. 44.)

3. A power of attorney dated January 11, 1849, executed by Alfred Leyburn, which on its face stated, that he resided in Rockbridge county in the State of Virginia, and which authorized Alexander Mahood of Mercer county in the State of Virginia to convey certain land in Mercer county, had on it the following certificate:

"ROCKBRIDGE COUNTY, TO-WIT:

"We, Wm. C. Lewis and Hugh Barclay, justices of the peace for the county aforesaid, hereby certify, that Alfred Leyburn personally appeared before us and acknowledged the foregoing power of attorney to be his act and deed.

"Given under our hands and seal this 13th day of April, 1849.

"WM. C. LEWIS, J. P.    [Seal.]
"HUGH BARCLAY, J. P.    [Seal.]"

On being presented to the county court of Mercer county Virginia at the May term 1849 this power of attorney was admitted to record, the order entered being in the following words: "Power of attorney from Alfred Leyburn to Alexander Mahood with a certificate of acknowledgment before two justices of Rockbridge county annexed was presented in court and admitted to record." This power of attorney was then recorded in the book, in which deeds were recorded in the clerk's office of the county court of Mercer county together with the certificate of acknowledgment and the order of said county court. HELD:

It was properly admitted to record, it sufficiently appearing from the power of attorney, the certificate of the justices and the or-

der of the county court of Mercer, that the Rockbridge county mentioned was in the State of Virginia, and that the power of attorney was acknowledged in said county. (p. 45.)

4. Adversary possession, to effect an ouster of the owner of land, must be open, visible and exclusive as well as continuous and uninterrupted and must be under either claim of title or color of title. If under claim of title only, the claimant must have actual possession of the land by enclosing it under fence or by clearing it or in some other visible and notorious manner; and the merely cutting and removing timber from time to time from the land under a claim of title will not constitute adversary possession. If there be adversary possession under claim of title, it will be confined to the land in the actual possession as above described of such claimant; but if such adversary possession is under color of title, as under a deed or other paper-title, if any part of the land is in actual adversary possession as above described, said adversary possession will be regarded as co-extensive with the boundaries contained in such deed or paper, and that too whether such deed or paper confer title good or bad, legal or equitable. (p. 52.)

*R. C. McClaugherty* for plaintiffs in error.

*Johnston & Reynolds* for defendant in error.

Statement of the case by Green, Judge:

This was an action of ejectment brought in May, 1884, by Edward M. Oney against Loraine Stinson and R. G. Clendenin in the circuit court of Mercer county. The declaration was in the usual form and set out the boundaries of a certain tract of land by its metes and bounds, which tract of land lay in Mercer county on the headwaters of the Twelve-mile fork of East River, and of which tract the declaration alleged: "The plaintiff was possessed of an estate in fee simple on January 1, 1882; and he being so possessed thereof, the defendants afterwards, to wit, on January 1, 1883, entered into the same, and they unlawfully withhold from the plaintiff the possession thereof to the damage of the plaintiff $800.00, and therefore he brings this suit." The defendants pleaded "not guilty" to this declaration, and issue was joined on said plea. On June 17, 1884, an order was made granting leave to either of the parties to go upon the land in controversy and do such surveying: as either party may require, reasonable notice having first been given to the other party.

On November 12, 1884, the judge of the circuit court being so situated as to render it improper in his opinion for him to preside at the trial of said case, the clerk proceeded to hold an election in the manner prescribed by law, which election resulted in the choice of Alonzo Gooch, Sr., an attorney residing in said county and practicing law in said court, who after being first duly sworn in the manner prescribed by law proceeded to hear said case; and thereupon came a jury, who were duly selected, tried and sworn to try the issue joined, who having partly heard the evidence were adjourned till the next day, and on the calling of the case the next day the plaintiff moved the court to permit him to amend his declaration at the bar by inserting therein the following words, to wit: "S. 100 poles to a hickory, ash and gum on the bank and near the forks of Twelve mile fork of East River," which motion was resisted by the attorneys for the defendants, and the court having maturely considered said motion and being of opinion, that said amendment would not prejudice either plaintiff or defendants, overruled the objection and permitted said amendment to be made, which was done; to which ruling of the court the defendants by counsel excepted; and thereupon the defendants tendered to the court their disclaimer to a portion of the land and asked leave to file the same, to which the plaintiff objected, but the court overruled this objection and permitted said disclaimer to be filed, which was done, and the plaintiff excepted to this ruling and action of the court; and the jury having after that heard all the evidence in the case and being adjourned from day to day on November 15, 1884, rendered their verdict as follows:

"We the jury find for the plaintiff the land in the declaration mentioned and fix the lines between the plaintiff and defendants at the points " T, " " S, " " R, " & " Q, " as shown on the plat filed in the report of surveyor George Caldwell in this case, and we find the boundaries to be as follows: Beginning &c., (then follows the meets and bounds of the land as found by this jury) and fix the damages at one cent."

Thereupon the defendants moved the court to set aside this verdict as contrary to the law and evidence and to grant them

a new trial, which motion was overruled on November 25, 1884, another day of the same term of the court, but, before it was overruled, the defendants again moved the court to set aside the verdict because of misdirection upon the law by the court, because of newly-discovered evidence and because of misconduct on the part of one of the jurors as shown by certain affidavits filed; and the court having maturely considered said motion and heard the counter affidavit of said juror and of the said plaintiff overruled said motion of the defendants, and on November 26, 1884, rendered the following judgment:

"This day came again the parties, by their attorneys, and thereupon it is considered by the court that the plaintiff do recover of said defendants the possession of the real estate in the verdict of the jury aforesaid therein described; and also that the said plaintiff do recover of the said defendants the sum of one cent, the damages assessed by the jury in their verdict aforesaid, with legal interest thereon from November 26, 1884, until payment, and that the plaintiff do recover of said defendant his costs about his suit in that behalf expended, including an attorney's fee of $5.00, and a writ of possession is awarded to said plaintiff to put him in possession of the land in the verdict of the jury aforesaid mentioned and described. And it is further considered by the court that the execution of the foregoing judgment be suspended in order to enable the said defendants to apply to the Supreme Court of Appeals of this State for an appeal from and *supersedeas* to said judgment; but the suspension of this judgment is not to take effect until the said defendants, or one of them, or some one for them, shall enter into and acknowledge, with good and sufficient security to be approved by the clerk of this Court, a suspension bond in the penalty of $200.00, conditioned as required by law."

During the trial of the case four bills of exceptions were taken by the defendants. The first was to the allowing by the court of a certain power of attorney with the certificate of acknowledgment and clerk's certificate attached to be read by the plaintiff to the jury from the book, wherein were recorded deeds in the clerk's office of Mercer county court, in making out his title to the land in controversy. This power

of attorney purported to be from Alfred Leyburn appointing Alexander Mahood, of Mercer county his attorney in fact " to. sell and make good and sufficient title in fee-simple to any tract of land in Giles or Mercer county aforesaid belonging to John Leyburn deceased and to take for him all lawful steps and to prosecute the same to a legal issue or termination as may be necessary to dispossess any person or persons who may be occupying or holding by a forcible entry or detainer any tract or parcel of land belonging to the said John Leyburn, deceased. This power of attorney was signed and sealed by Alfred Leyburn and dated January 11, 1849. And it commenced as follows. " Know all men by these presents That I, Alfred Leyburn of the county of Rockbridge and State of Virginia as executor of John Leyburn, deceased, late of the county of Rockbridge have nominated, constituted and appointed, and by these presents do nominate constitute and appoint Alexander Mahood of the county of Mercer in the State aforesaid my true and lawful attorney for me and in my name, &c."

CERTIFICATE OF ACKNOWLEDGMENT.

" *Rockbridge County, to wit :*

"We, William C. Lewis and Hugh Barclay, justices of the peace for the county aforesaid, hereby certify that Alfred Leyburn personally appeared before us and acknowledged the foregoing power of attorney to be his act and deed.

"Given under our hands and seals April 13, 1849.

"WILLIAM C. LEWIS, [SEAL.]
"HUGH BARCLAY,      [SEAL.]"

CLERK'S CERTIFICATE.

"AT MERCER COUNTY COURT, }
"MAY TERM, 1849. }

"Power of attorney from Alfred Leyburn to Alexander Mahood, with a certificate of acknowledgment before two justices of Rockbridge county annexed, was presented in court and admitted to record.

"Teste :

"C. W. CALFEE, *Clerk.*"

The second bill of exceptions was to the action of the court during the trial in permitting the plaintiff to amend his declaration as hereinbefore stated pending the trial. The third bill of exceptions was to the giving by the court of the two following instructions to the jury at the request of the plaintiff:

### INSTRUCTION No. 1.

"The jury is further instructed that if they believe from the evidence that the lines claimed by the plaintiff are the true lines of the Leyburn survey, and that the defendants' lines call for running with the lines of the Leyburn survey, the defendants are without color of title and the jury must find for the plaintiff."

### INSTRUCTION No. 2.

"If the jury shall believe from the evidence in this case that the plaintiff, E. M. Oney, and his father, William Oney, under whom he claims to have had actual, adverse, open and notorious possession of the land in controversy and described in the declaration in this case, or a portion thereof, under the deed of Mahood, attorney-in-fact, &c., and under the will of said Oney for a period of more than ten years before the entry of the defendants, or either of them, within the lines claimed by the plaintiff, then the plaintiff's title is sufficiently made out to entitle him to recover in this action, unless the jury further believe that the defendants entered within the lines claimed by the plaintiff and have had and held open, continuous, adverse possession thereof, under color of title for a period of ten years before the institution of this suit, and to constitute such adverse possession, the defendants must have actual occupancy and improvements by fencing, clearing, building, &c., so as to change the nature of the land from its wild state, and that the merely cutting and removing of timber can not constitute such adversary possession."

The fourth bill of exceptions set out all the evidence offered to the jury in the trial of the case, which it is deemed unnecessary to state, and the character of which need not be stated further than to say, that from this evidence it sufficiently appears, that instructions one and two above stated,

were in reference to matters, which were pertinent to the matters in controversy before the jury as shown by the evidence and were not irrelevant. This bill of exceptions after stating all the evidence before the jury sets out the verdict rendered by them, as heretofore stated, and states, that after the jury was discharged, the defendants by their attorney moved the court to set aside said verdict and award them a new trial for the reasons hereinbefore stated, and to support this motion upon the grounds assigned by them of newly-discovered evidence they introduced the affidavits of three witnesses and the joint affidavit of the defendants, all of which affidavits are set out at length, but the contents of which I do not deem it necessary to state, and an affidavit of a witness as well as the joint affidavit of the defendants was also introduced to show misconduct on the part of a juror; and to offset these affidavits, the affidavit of the juror as well as the affidavit of the plaintiff was introduced, the contents of which I deem it unnecessary to state. The court refused to set aside the verdict upon any of the grounds assigned, which is the ground on which the fourth bill of exceptions is based.

The court having rendered the judgment hereinbefore stated for the plaintiff pursuant to this verdict on November 20, 1884, a writ of error and *supersedeas* thereto was allowed upon a petition of the defendants assigning the following errors :

"First.—The verdict of the jury ought to have been set aside, because the evidence did not warrant it.

"Second.—The verdict should have been set aside because of after-discovered evidence.

"Third.—The verdict of the jury ought to have been set aside for misconduct of one of the jurors.

"Fourth.—The verdict of the jury should have found, what estate the plaintiff had in the land embraced in the said verdict, and ought to have been set aside.

"Fifth.—The court erred in permitting the plaintiff to amend his declaration at the time he did ; the amendment was wrong independent of the question of time.

"Sixth.—The court ought to have set aside the verdict of the jury, because the courses and distances put into the dec-

laration by said amendment are not in the will of William
Oney, under which plaintiff claims and embrace land not de-
vised to the plaintiff.

"Seventh.—The court erred in permitting the plaintiff to
read to the jury as evidence in his behalf the power of at-
torney from Alfred Leyburn to Alexander Mahood, for the
reason that the certificate of acknowledgment does not show
in what county or State it was taken.

"Eighth.—The court erred in giving to the jury the plain-
tiff's instructions Nos. 1 and 2, for the reason among others
that said instructions took from the jury the consideration
of the question of possession under *claim* of title.

"Ninth.—The court erred upon the whole case both upon
the law and the facts."

Opinion by Green, Judge:

I will consider first the fourth assignment of error in the
petition of the plaintiffs in error, the defendants in the court
below. The verdict of the jury was: "We the jury find for
the plaintiff the land in the declaration described" (fixing its
boundaries by specified metes and bounds) "and fix his dama-
ges at one cent," and thereupon the court rendered a judg-
ment "that 'the plaintiff do recover of the defendants the
possession of the real estate in the verdict of the jury discri-
bed and also one cent, the damages assessed by the jury, &c."
Now in the case of *Low* v. *Settle*, 22 W. Va. 388, point 4 of
syllabus, it was decided by this Court, that "the verdict of a
jury in an ejectment case is fatally defective, which finds,
that the plaintiff is entitled to recover the lands in the decla-
ration mentioned, but which fails to specify the estate found
in the plaintiff, even though the declaration states that the
plaintiff had been possessed of the land in fee-simple." This
decision was rendered after a careful review of the cause;
and the reasons which led us to this conclusion are given
at length on pages 395–402; and we expressly overruled
the case of *Elliott et al* v. *Sutor*, 3 W. Va. 37, so far as it
was in conflict with this conclusion. I have again examined
this question and see no reason for questioning the conclu-
sion reached by us in *Low* v. *Settle*. The Code, ch. 136 sec.
27, expressly requires, that in every action of ejectment "the

verdict must specify the estate found in the plaintiff, whether it be for fee or for life, or whether it be for a term of years, and specify the duration of such term."

As shown in that case, when the statute abolished the writ of right and permitted an action of ejectment to be brought, not only when an action of ejectment could formerly be brought but also in any case, in which a writ of right would formerly be brought (Code p. 518), it became necessary that the statute should fix the form of the verdict in this new action of ejectment, as the verdict in an action of ejectment had always been different from that in a writ of right. This the statute did; and, if the verdict fails to find what estate in the land in the declaration mentioned is found, it can not be held, as has been contended, that it should be treated, as though the verdict had specified, that the plaintiff was entitled to a fee-simple estate in the land in the declaration mentioned, without danger under our statute of doing gross injustice to the defendant. (22 W. Va. 402).

Objection is urged to the form, in which this question is made. It is argued that it could not be raised by a motion by the defendants to set aside the verdict and award a new trial but only by a motion in arrest of judgment; and *Hawley* v. *Twyman*, 24 Gratt. 516 is referred to as sustaining this position. That case was reviewed by this Court in *Low* v. *Settle*, 22 W. Va. 397; and it is there strongly intimated, that this case in its reasoning could hardly be followed, though it was not definitely decided, that in a case in which the verdict was worded, as it was in this Virginia case, it might not perhaps be followed (see p. 399). In that case the supposed error from the defect in the verdict was sought to be corrected by a motion in arrest of judgment; but while the court did not hold, that this error, if one had existed, in the verdict might not be corrected by motion in arrest of judgment, it did not hold, that that would be the proper mode of correcting such error, but held, that the judgment ought not to be corrected in this case, because the verdict was sufficient. In *Low* v. *Settle*, 24 W. Va. 391, the question was raised by a motion by the defendant, that the court grant him a new trial; and the court having refused to grant him a new trial, the judg-

ment of the circuit court was reversed, and a new trial awarded.

It may be that this question might properly be raised by a motion in arrest of judgment; but since the decision in *Low* v. *Settle*, 24 W.Va. 404, this Court can not hold, that it may not be raised by a motion for a new trial; and if so, as the grounds, on which the motion for a new trial was made, need not be specified on the face of the record in any case, it would follow, that the fact, that the record does not on its face show, that this was one of the grounds, on which the defendant relied in his motion for a new trial in the court below, will not prevent him from relying on this ground in this Court. We have decided in this State, that when a motion is made before a court to set aside a verdict and grant a new trial, and the counsel puts his motion on particular grounds as in this case, neither the court below nor this Court is confined to the grounds, upon which the motion is based, but may properly set aside such verdict for any sufficient reason shown by the record (*Shrewsbury* v. *Miller et al*, 10 W. Va. 115, point 4 of Syllabus and p. 120 *et seq.*) There is no necessity for determining, which is the most proper mode in such a case as the one before us of calling the attention of the court below to the fact, that the verdict of the jury is fatally defective, because it fails to find the estate of the plaintiff in the land as required by our law, whether by motion in arrest of judgment, as was done in *Hawley* v. *Twyman, trustee*, 24 Gratt. 516, or by a motion for a new trial as in the case of *Low* v. *Settle*, 22 W. Va. 391. I would say however, that, though probably either mode would answer, yet a motion for a new trial would seem to be most appropriate. The case seems to resemble that, where a jury finds a special verdict and omits to find in such special verdict some fact, which is essential to enable the court to enter up any judgment on such special verdict. In such case it does not seem to be the practice for a motion to be made in arrest of judgment, but the court awards *venire facias de novo*, that is, grants a new trial. (*Geddy* v. *Butler*, 3 Munf. 345; *Cropper* v. *Carlton*, 6 Munf. 277; *Brown* v. *Ferguson*, 4 Leigh. 37). These causes also show, that a new trial may be granted by the court be-

low on such defective verdict being rendered ; but they show further, that this may be done, though no motion is made for a new trial ; and that, if it be not done by the court below, it may be done by the appellate court ; and that it may be done by the appellate court, though the attention to the fatal defect in the special verdict be called to the attention of the court only after the case reaches the appellate court, and the record shows, that there was no motion in arrest of judgment, no motion for a new trial, and no motion for a *venire facias de novo* in the court below.

From these cases I infer, that, when the verdict of the jury in an ejectment case is for the plaintiff for the lands claimed in the declaration, but the jury in their verdict fail to state, as the statute requires, what estate the plaintiff has in said land, though there was no motion for a new trial in the court below nor motion in arrest of judgment by the defendant, yet upon writ of error the appellate court will set aside a judgment rendered on such defective verdict and grant a new trial ; and that is the reason why neither the court of appeals of Virginia in *Hawley* v. *Twyman*, 24 Gratt. 516, nor this Court in *Low* v. *Settle*, 22 W. Va. 387, says anything in particular about the character of the motion made in the court below on the rendition by the jury of such defective verdict. The circuit court should set aside such defective verdict and order a new trial of its own accord, and if it fails so to do and enters up a judgment on such fatally defective verdict in favor of the plaintiff, the appellate court will reverse such judgment and direct a new trial, even though no new trial had been asked for in the court below. The judgment in the court below in favor of the plaintiff rendered November 26, 1884, must therefore be reversed and the case remanded to the circuit court of Mercer for a new trial. This renders it unnecessary or improper to express any opinion in reference to many of the questions, which have been discussed by counsel in this Court.

The case which on the evidence may be made out before the next jury may differ essentially from the case now presented by the record before us. We therefore refrain from expressing any opinion on the merits of the case ; and it would be useless for us to consider or determine, whether

the after-discovered evidence relied on by the defendants was such, that the court below should have awarded them a new trial for that reason, or whether there was any misconduct on the part of the juror, and, if so, whether it was such, that because of it a new trial should have been granted the defendants, as these questions can not again arise in this case upon the new trial. Nor need we consider, whether the court erred in permitting the plaintiff to amend his declaration in the manner it did pending the trial of the case before the jury. There can be no question but that the plaintiff had a perfect right, when he filed his declaration, to put it in the form and words, in which it was after this amendment, even though, as stated in the sixth assignment of error, as amended the declaration demands land not embraced in the will of William Oney. The plaintiff can insert in his declaration any metes and bounds for the land, which he demands. The defendant can have no right to complain, if, when the case is again tried, it is tried on this amended declaration.

As it is almost certain, that the matters contained in the seventh assignment of error will present themselves again in another trial of this case by the jury, and that the same question will be presented to the court below, that was decided by the court at the former trial and is the basis of this seventh assignment of error, it is our duty to express the opinion of this Court on this assignment of error. The question is: Did the court err in permitting the plaintiff in making out his title to the land in controversy to read from the record-book of deeds in the clerk's office of the county court of Mercer the power of attorney from Alfred Leyburn to Alexander Mahood? This depends entirely upon whether or no this power of attorney was legally admitted to record. If it was, the court properly admitted the record-book to be read, or it ought, which amounts to the same thing, to have permitted a properly attested copy of it taken from this record-book to be read. But, if this power of attorney was improperly admitted to record, then this copy of it taken from the record-book was not evidence, and the court erred in permitting it to be read. The clerk's certificate appended shows, that the county court of Mercer county

at the May term, 1849, admitted this power of attorney to record. The law, under which alone they. could then have admitted this or any other paper to record, is to be found in the Revised Code of 1819. The Code of Virginia of 1849 had not gone into operation, when this power of attorney was recorded; and we must determine whether it was legally admitted to record by the law, as it existed in Virginia prior to 1849. This law is to be found in the Revised Code of 1819, Vol. I, p. 363, ch. 99, sec. 7, and is as follows :

"Any deed may be admitted to record upon the certificate under seal of any two justices of the peace for any county or corporation within the *United States* or any territory thereof, or within the district of *Columbia*, annexed to such deed, and to the following effect to-wit :

"COUNTY OR CORPORATION, SS :

 . " *We, A. B. and C. D., justices of the peace in the county (or corporation) aforesaid in the State (or territory or district) of* —————— *do hereby certify that E. F. a party (or E. F. & G. W. &c., parties) to a certain deed bearing date on the* ——— *day of* ——— *and hereto annexed, personally appeared before us, in our county (or corporation) aforesaid and acknowledged the same to be his (or their) act and deed, and desired us to certify the said acknowledgement to the clerk of the county (or corporation) court of* ——— *in order that the said deed may be recorded.*

  " *Given under our hands and seals this* ——— *day of* ———
"*A. B.* [SEAL.]
"*C. D.* [SEAL.]"

This statute was construed by the court of appeals of Virginia in July, 1848, in the case of *Shanks* v. *Lancaster,* 5 Gratt. 117. The court there say :

" And the court is further of opinion, that a power of attorney for the conveyance of lands falls within both the letter and spirit of the seventh section of the Act regulating conveyances, 1 Rev. Code, ch. 99, p. 363, authorizing deeds to be acknowledged before any two justices of the peace for any county or corporation within the *United States*; and that such instrument may, upon due certificate by the justices of such acknowledgment by the grantor therein, be admitted to record, together with the deed of conveyance made under the authority thereof, in the proper county or corporation within this

commonwealth.    And although the form of the certificate by
the justices of such acknowledgment of a deed given in the
Act, states that the party desired them to certify the acknowl-
ment to the clerk of the county or corporation court of———
in order that the same may be recorded; yet in as much as
that statute does not require the precise form, but only the
effect of the certificate therin stated, to be observed, this, as
well as other points of the statute ought to be construed ac-
cording to its spirit, and with a view to the purpose it was
intended to accomplish.  The object of mentioning the county
or corporation in the certificate is not to determine whether
the grantor desires that the instrument shall be recorded or
not, for that is the privilege not of the grantor but of the
grsntee, who may exercise it upon proof by the subscribing
witnesses of the sealing and delivery of the deed, without
proving by them that the grantor desired it to be recorded.
Nor was it the intent of the legislature that the validity of
the recordation should depend upon the will of the grantor
in regard to the county or corporation in which the deed
should be admitted to record, for that is a matter which the
law itself has determined, by requiring the instrument to be
recorded in the county or corporation where the land lies.
The only rational purpose of mentioning the county or cor-
poration in the certificate, is to designate the county or cor-
poration in which the law requires the deed to be recorded,
for wherever that may be, it is idle to suppose the parties did
not intend necessarily, and as a matter of course, that the
instrument should be there recorded.  And after a deed has
been recorded in the proper county, to hold the recordation
invalid, because the certificate does not express the grantor's
desire to that effect, would sacrifice the substance for the sake
of the shadow, and in all probability shake many land titles
within this commonwealth."

The certificate of the justices on the power of attorney, the
legality of the recording of which we are inquiring into, is
in these words:

"ROCKBRIDGE COUNTY, TO WIT:

*We, Wm. C. Lewis and Hugh Barclay, justices of the peace
for the county aforesaid hereby certify that Alfred Leyburn per-*

*sonally appeared before us and acknowledged the foregoing power of attorney to be his act and deed.*

"*Given under our hands and seals this* 13*th of April,* 1849.

"WM. C. LEWIS, J. P.   [SEAL.]

"HUGH BARCLAY, J. P.   [SEAL.]"

It differs from the certificate, which was then required to be appended to a deed to entitle it to be recorded, in the fact, that it omits the words "within the State of Virginia" after the statement in the certificate, that they were justices of the peace of the county aforesaid, that is, of Rockbridge county, and also that it omits, after stating that the grantor personally appeared before them, the words "in our county aforesaid," and that it omits entirely the last clause "and desired us to certify the said acknowledgment to the clerk of the county court of Mercer county in order that the said deed may be recorded," and that it states that the instrument acknowledged was "the foreging power of attorney" instead of stating that it was "a deed bearing date January 11, 1849." The case of *Shanks* v. *Lancaster*, 5 Gratt. 117, above referred to expressly decides, that within the meaning of this law such a power of attorney as the one under consideration was "a deed" and could be legally recorded, and also that the omission of the last clause in the certificate set out in the act did not vitiate the certificate or render the recording of such power of attorney illegal.

It only remains then to inquire, whether the other defects above pointed out render this certificate fatally defective so as to make the recording of this power of attorney illegal. These defects are, first, that Rockbridge county, where this certificate appears on its face to have been executed by the justices of the peace of said county, is not expressly stated on the face of the certificate, as it should have been, to "be in the State of Virginia;" and secondly, it is not expressly stated on the face of the certificate, that the personal appearance of Alfred Leyburn before these justices to acknowledge the execution of that power of attorney was in "Rockbridge county." Are these fatal defects; or do these omitted matters sufficiently appear upon the face of this certificate, though they are not expressly stated on its face, as they

should have been? When it is remembered, that the law did not require the certificate to be in exact form but only to this effect, and the liberal construction placed on this law by the court of appeals of Virginia in the case in 5 Gratt., it does seem to me, that these facts claimed to be omitted in this certificate are really not omitted, though they are not expressly stated. In construing this certificate reference may be had to the power of attorney itself, which the certificate says was acknowledged by Alfred Leyburn, who executed it, and also to the certificate of the clerk of the county court of Mercer stating, that at the May term, 1849, of said court this "power of attorney from Alfred Leyburn to Alexander Mahood with this certificate of acknowledgment before two justices of Rockbridge county annexed was presented in court and admitted to record," which certificate of the clerk was recorded with said power of attorney. That we may do so, is sustained by the decisions of the courts. (See *Carpenter* v. *Dexter*, 8 Wall. 526, 527 ; *Brooks* v. *Chaplin*, 3 Vt. 281 ; *Luffborough* v. *Parker*, 12 Serg. & R. 48).

Of these cases the Vermont case strongly resembles the case before us. The certificate of acknowledgment in that case, as in this, did not show in what State the acknowledgment was taken ; but the omission in the Vermont case was supplied by reference to the deed, in which the grantor described himself as a "resident of Suffield in the county of Hartford and State of Connecticut." It is true that the acknowledgment was taken in that case but two days after the date of the deed, whereas in the case before us it was taken nearly three months afterwards. The acknowledgment had as its venue simply "Hartford county ;" and as it was taken so soon after the date of the deed, when the deed was presumed to have been executed, and was taken in Hartford county, the court said it could intend no other than the same county of Hartford, where the deed was supposed to have been executed. "It is not indispensable," said the court, "that the place of taking should fully appear from the acknowledgment itself provided it can be discovered with sufficient certainty by inspection of the whole instrument." In the case before us the power of attorney begins: "Know all men by there presents, that I, Alfred Leyburn, of the county

of Rockbridge and State of Virginia, as executor of John Leyburn, deceased, late of the county of Rockbridge, have nominated," &c.   Within a month after this acknowledgment was taken it was admitted to record by the county court of Mercer county, Virginia.   Does not this power of attorney and this entry on the record-book of the county court of Mercer county, Virginia, read in connection with the certificate of two justices of Rockbridge county show with sufficient certainty, that the Rockbridge county, of which they were justices, was in Virginia, where the person who executed the power of attorney, is expressly stated to have resided.   The fact, that these justices were justices of Rockbridge county, Virginia, is rendered more apparent, when we consider, that the justices holding the county court of Mercer county, who ordered this power of attorney and certificate of these justices to be admitted to record, were Virginia officers and as such had judicial notice, that William C. Lewis and Hugh Barclay, who signed this certificate, were justices of Rockbridge county, Virginia.   As it is the admitted policy of the law to uphold such certificates, when substance is found, and not to suffer the proofs of instruments to be defeated by technical or unsubstantial objections, it does seem to me we must regard this certificate by these two justices as a certificate executed by them as justices of Rockbridge county in the State of Virginia.

This conclusion is strongly sustained by the case of *Adams* v. *Medsker*, 25 W. Va. 127.—On page 131 Judge Snyder in pronouncing the opinion of this Court says:   "But it seems to me there ought to be no question about the sufficiency of the acknowledgment as to the two heirs William and John A. Lyons.   The certificate does not show on its face the State, but the deed shows that the parties resided in the State of Pennsylvania, and the certificate accompanying it, under the seal of the court of common pleas of Fayette county, shows that the justices who took the acknowledgment were three justices of Fayette county in the State of Pennsylvania.   This is sufficient to show that Fayette county mentioned in the certificate is in the State of Pennsylvania.   The appellant objects that it does not state the parties signed the deed nor give the date of the deed.   It is sufficient that the deed shows

that the parties signed it.   The usual form gives the date of
the deeds, but this is only done to identify it, and the certifi-
cate identifies it as the within indenture, which refers
to and identifies the deed as fully as if its date had
been given." The deed in that case was executed and
acknowledged in 1854, when the law did not require the au-
thority of the justices to take the acknowledgment to be
proven by the certificate of the court of common pleas of
Fayette county or in any other manner than by their certify-
ing themselves as justices, and therefore this certificate of the
court of common pleas added little or no weight to the evi-
dence, that these justices were justices of Fayette county, and
that the Fayette county, of which they were justices, was in
the State of Pennsylvania.

In the case before us then it sufficiently appears, that Wm.
C. Lewis and Hugh Barclay, before whom this power of at-
torney was acknoweledged by Alfred Leyburn a resident of
Rockbridge county, Virginia, were then justices of Rock-
bridge county, Virginia.

It only remains to show from the face of the certificate,
that this acknowledgment was made by Alfred Leyburn
before these two justices within this county of Rockbridge.
The fact, that the acknowledgment was made by a resi-
dent of that county before two justices of that county,
goes far to establish this fact. (*Thurman* v. *Cameron*, 24
Wend. 87). But the certificate by its venue at its head
" Rockbridge county, to wit:" shows, that the certificate
was signed by these justices in that county; and taken
in connection with the above facts, it seems to me, it shows
with very great certainty, that it was acknowledged in said
county of Rockbridge ; and it seems under these circum-
stances appearing on the face of this certificate taken in con-
nection with what appears on the face of the power of attor-
ney referred to in the certificate it must be presumed, that this
acknowledgment was made on the day and in the county,
where the certificate of it bears date, that is, on April 15, 1849,
in Rockbridge county, Virginia.   If this be so, from what
we have said it is obvious, that this power of attorney was
legally recorded in the clerk's office of the county court of
Mercer county, Virginia, where the land lay, the conveyance

of which this power of attorney authorized. And the court properly permitted a copy of this power of attorney from the record-book of deeds in the clerk's office of the county court of Mercer county to be read to the jury as evidence.

As it is probable, that in the next trial of this case before a jury as in the last a question will arise as to what constitutes such adversary possession, as will confer good title on the party holding lands, I deem it proper to express my views as to the eighth assignment of error. But as the case as presented to the jury by the evidence may differ widely from the case presented to the jury on this point at the last trial, I shall express my views only in a general manner, as a definite expression of views in reference to this matter based on the specific facts now in the record might in view of the probable change in the character of the case in this matter tend to mislead the jury and embarass the court below on the next trial. Still I regard it as our duty to express our views in a general way, taking care not to make them so detailed, that they would be applicable only, if the evidence on this point should be of such a definite character as we may think it probably will be, but in which supposition we may be in error.

This Court in the syllabus of *Core* v. *Faupel*, 24 W. Va. 238, thus lays down the law on this subject: "The most usual modes of actual possession is by occupancy, under enenjoyment, residence, cultivation, enclosure and improvement. In any case for possesion to be adverse and effect an ouster of the owner, it must in its nature possess such notoriety, that the owner may be presumed to have notice of it and of its extent, and it must therefore be open, visible and exclusive. It must also be continuous and uninterrupted. Consequently, if at any time during the statutory period the adverse claimant does not continue in this sort of possession so that he may be sued as a trespasser, he can not protect his claim by the statute of limitations. The principal office of a claim or color of title is to define the boundaries and fix the extent of the adverse holding. If it is a *mere* claim of title, the adverse holding will be limited to the actual enclosure of the claimant. But if it is a deed or other paper title, and the possession is exclusive, it will be regarded as co-extensive with the boundaries contained in such deed or paper. The

color of title however, may be good or bad, legal or equitable." These views are sustained by these Virginia and West Virginia cases. *Kincheloe* v. *Tracewells*, 11 Gratt. 587 ; *Taylor* v. *Burnsides*, 1 Gratt. 165 ; *Shanks* v. *Lancaster*, 5 Gratt. 110 ; *Adams* v. *Alkire*, 20 W. Va. 480 ; *Garrett* v. *Ramsey*, 26 W. Va. 345 ; *Overton* v. *Davidson*, 1 Gratt. 211 ; *Koiner* v. *Rankin*, 11 Gratt. 420.

In the case before us the first instruction given by the court to the jury is apparently objectionable in this, that it assumes apparently, that, if the plaintiff has the legal title to all the land in controversy, the defendants can not successfully claim it or any part of it by adversary possession, unless they have color of title to it by some deed or other writing, in which boundaries are set out, which would enclose the land in controversy or some part of it. But though the defendants had no such color of title, no deed or other writing, the true and real boundaries of which covered any part of the land in controversy, yet, if the defendants and those under whom they claim have taken *actual* possession of any portion of the land in controversy by its *actual* occupancy, use and enjoyment in any of the modes, which would make an *actual* possession, such for instance as enclosing or clearing, and such *actual* possession was taken under *claim* of title, as for instance under the belief, that the tract of land adjoining, to which they had title, included in its boundaries that portion of the land in controversy, of which they took actual possession as by clearing or enclosing, and such possession under such claim of title was open, visible and exclusive and was continuous and uninterupted for more than ten years before the institution of this suit, the plaintiff could not recover this portion of the land in controversy *thus* in the *actual* and adverse possession of the defendants and those under whom they claim. (*Kincheloe* v. *Tracewells*, 11 Gratt. 605.) But if the lines claimed by the plaintiff below are the true lines of the Leyburn survey, and the defendants' lines call for running with the lines of the Leyburn survey, so that according to their paper-title there could be no conflict or overlap of the two tracts respectively claimed by the plaintiff and defendants, then the defendants being without *color* of title, the jury must find for the plaintiff except as to

so much of the land in controversy, if any there be, as may have been in the *actual, exclusive, continuous, adversary* possession of the defendants or those under whom they claim under such claim of title for ten years prior to the institu-. tion of this suit.

The second instruction granted on the plaintiff's motion seems inexact in its definition of what constitutes adverse possession. It is, as stated in this instruction, "actual occupancy and improvements by fencing, clearing, building, &c,. so as to change the nature of the land from its wild state, and that merely cutting and removing timber can not constitute such adversary possession." Now this language is inexact in this, that it apparently requires to constitute *actual* occupancy improvements by fencing and also by clearing and also by building, and whereas there can be no question, that any one of these acts, fencing, clearing, or building would constitute actual occupancy. It is true, as stated in this instruction that "merely cutting and removing timber when it is not done to such an extent as to constitute a clearing of the land would not be regarded as adversary possession." The definition of adversary possession would have been more accurate had it been: "actual occupancy by fencing or by clearing or some other act so as to change the nature of the land from its wild state, and the mere cutting and removing of timber from time to time to an extent not amounting to a clearing of the lands can not constitute such adversary possession."

It is a further objection to this second instruction given by the court below, that like the first instruction it seems to assume, that the defendants could acquire ownership of no portion of the land in controversy by any length of adversary possession, unless such adversary possession was held under *color* of title; whereas, as we have seen, such ownership of a portion of the land in controversy might have been acquired by adversary possession under *claim* of title, though the defendant had no color of title, that is, no paper-title, the boundaries contained in which covered any part of the land in controversy ( *Kincheloe* v. *Tracewells,* 11 Gratt. 605 ). But if the defendants had no *color* of title to the land in controversy, the boundaries of this adverse possession would be con-

fined to the land in their actual possession by clearing or by enclosing with fencing or in some other manner equally marked, and could not be extended to the place where they supposed the lines of the Leyburn survey, which were the boundaries of their land, were, unless in point of fact the lines of the Leyburn survey were really there.

While I have criticised these two instructions, because they apparently omitted to note, that a party may claim adverse possession to land, where he has *claim* of title to it, as well as where he has *color* of title, and because the definition of adverse possession is inaccurate, yet I do not mean to say, that, if there had been no other error in the record, I should for these reasons have held, that the judgment of the court should be reversed. Whether it should be reversed or not, would depend upon the conclusion, which after a careful ex-examination of the evidence we might have reached, as to whether these errors or inaccuracies in these instructions could have prejudiced the defendants. It is claimed, that they could not, as the jury could not have found a different verdict, if the instructions had been just what they should have been. For the reasons I before stated I do not regard it proper to express any opinion, as to whether these inaccuracies in these instructions could be on the facts now developed in this case prejudicial to the defendants below ; but I have regarded it proper to point out these inaccuracies that they may be avoided on the next trial of the case.

For the reasons above given I am of opinion, that the judgment of the circuit court of Mercer of November 26, 1884, must be set aside, reversed and annulled, and the plaintiffs in error must recover of the defendant in error their costs in this Court expended, and this Court proceeding to render such judgment, as the court below should have rendered, must set aside the verdict of the jury and award a new trial, the costs of the former trial to abide the final decision of the case. And this case is remanded to the circuit court of Mercer county to be proceeded with according to the principles laid down in this opinion and further according to law.

REVERSED.    REMANDED.